UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WARREN TAYLOR YEAKEY,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | Case No. 3:16-cv-05213-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed, and this matter should be remanded for further administrative proceedings.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 1

FACTUAL AND PROCEDURAL HISTORY

On January 10, 2008, plaintiff filed an application for DIB, alleging disability as of November 16, 2006. *See* Dkt. 7, Administrative Record ("AR") 746. The application was denied upon initial administrative review on March 31, 2008, and on reconsideration on August 1, 2008. *See id.* After a hearing in which plaintiff testified, Administrative Law Judge ("ALJ") Verrell Dethloff found Plaintiff not disabled on July 15, 2010. AR 22. The Appeals Council denied Plaintiff's administrative appeal, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff appealed to the United States District Court for the Western District of Washington, and the parties stipulated to remand for further proceedings. *See* AR 601-603; *Yeakey v. Astrue*, 3:11-cv-05272-KLS (W.D. Wash. Nov. 17, 2011).

A second hearing was held before ALJ Robert P. Kingsley on January 8, 2013, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert and Tracy Gordon, M.D., a medical expert. AR 534-77. In a decision dated May 13, 2013, ALJ Kingsley determined plaintiff to be not disabled. *See* AR 507-33. ALJ Kingsley's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(a), (d). Plaintiff appealed ALJ Kingsley's decision finding Plaintiff not disabled to the United States District Court for the Western District of Washington, which remanded the case for further proceedings. *See* AR 855-877; *Yeakey v. Colvin*, 3:13-cv-05598-BJR-JRC (W.D. Wash. July 31, 2014).

A third hearing was held before ALJ Kingsley on November 19, 2015. AR 780-91. In a decision dated January 12, 2016, ALJ Kinglsey again found plaintiff to be not disabled, and the third decision finding plaintiff not disabled became the final decision of the Commissioner. *See* AR 746-72; 20 C.F.R. §§ 404.984(a), (d). On March 22, 2016, plaintiff filed a complaint in this

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 2

Court seeking judicial review of the Commissioner's final decision.[1] *See* Dkt. 1. The administrative record was filed with the Court on May 23, 2016. *See* Dkt. 7. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits because the ALJ erred in evaluating the medical evidence in the record, including the opinions of Tracy Gordon, M.D. and Erum Khaleeq, M.D. *See* Dkt. 14. For the reasons set forth below, the Court agrees the ALJ erred in evaluating the medical opinion of Dr. Khaleeq and Dr. Gordy at step four, and therefore in determining plaintiff to be not disabled. Also for the reasons set forth below, however, the Court finds that while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

---

[1] When stating "the ALJ" or "the ALJ's decision" throughout this Order, the Court is referring to ALJ Kingsley's January 2016 decision.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 3

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.   The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 4

whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater

weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

    A. <u>Erum Khaleeq, M.D.</u>

Plaintiff challenges the ALJ's finding regarding the medical opinion of Erum Khaleeq, M.D. Dkt. 9, pp. 8-10. Dr. Khaleeq, a psychiatrist, completed a psychological evaluation on July 21, 2012. AR 730-37. She reviewed clinical records from Advance Health and Rehabilitation and a progress note from Advanced Registered Nurse Practitioner ("ARNP") Erin Chase, dated April 1, 2010. AR 733. Dr. Khaleeq also charted plaintiff's self-reported history, conducted a mental status examination, and noted her observations and opinions. *See* AR 730-37. Plaintiff reported flashbacks associated with a crane accident where he fell 227 feet, as well as nightmares of his mother's murder after witnessing his stepfather shoot her when he was 10 years old. *See* AR 733-34. On mental status examination, Dr. Khaleeq observed plaintiff was restless with "[s]omewhat loud and pressured" speech at times. AR 735. She also observed his mood as depressed, anxious, and restless. *Id.* As to memory, plaintiff scored 3/3 on immediate recall and 1/3 after 5 minutes. AR 736. Plaintiff was able to perform serial 3s, but could not spell the word "world" forward or backward. *Id.*

Dr. Khaleeq opined that plaintiff has marked limitations in his ability to interact appropriately with the public, supervisors, and co-workers and moderate limitations in his ability to respond appropriate to usual work situations and changes in routine work settings. AR 731. Dr. Khaleeq also opined that plaintiff has moderate limitations related to his ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. AR 730. Dr. Khaleeq assessed that plaintiff has "significant

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 6

short term memory deficits" and that "[t]he usual stressors encountered in the workplace would further aggravate his psychiatric condition." AR 730, 737.

The ALJ gave Dr. Khaleeq's opinion little weight "for a number of reasons" including:

[1] [T]he claimant reported much more extreme symptoms to Dr. Khaleeq than those that were reported to his treatment provider ARNP Chase. He also presented in a more disturbed fashion than he has presented to ARNP Chase.

[2] Unfortunately, Dr. Khaleeq reviewed a progress noted [sic] from ARNP Chase dated April 1, 2010. However, he apparently did not have the opportunity to review the remainder of her notes. Overall, her notes doe [sic] not show the claimant as presenting in such an extreme fashion. It appears that the only other notes he reviewed were the claimant's three therapy appointments with Doris from May to June of 2010.

[3] The claimant's reports of symptoms to Dr. Khaleeq and his presentation cannot be relied upon as they are inconsistent with the overall evidence of record including the claimant's reports of symptoms (or lack of reports of symptoms) to ARNP Chase as well as his presentation at appointments with ARNP Chase.

[4] Further, the claimant has demonstrated the ability to interact with some degree of success, perform repetitive tasks, perform work activities on a consistent basis, and maintain regular attendance, and deal with the usual stressors encountered in the workplace.

[5] The [Cooperative Disability investigations Unit ("CDIU")] investigator reported that during his contact with the claimant, the claimant made good eye contact and was very relaxed during the interview. After the interview began, the claimant was focused and engage[d] with the investigator. He was able to furnish requested information. His speech had a normal rate and flow and he produced a steady and spontaneous stream of speech without prompting. He was articulate and easy to understand. His thought process was complete with well structured sentences.

AR 769-70 (numbering and spaces added; citations omitted). Plaintiff argues the ALJ erred in rejecting Dr. Khaleeq's opinion. The undersigned agrees.

First, the ALJ rejected Dr. Khaleeq's opinion because plaintiff presented in a more "disturbed" fashion during his examination with Dr. Khaleeq than when he met with ARNP Chase. AR 769. As an initial matter, ARNP Chase typically treated plaintiff for chronic pain and

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 7

pain management, not for mental health treatment. *See*, *e.g.*, 1025-87; 500-06. Accordingly, ARNP Chase did not conduct thorough mental status examinations or typically assess plaintiff for mental health impairments. *Id.* Indeed, she noted that he is "not very forthcoming when it comes to this kind of thing," referring to plaintiff's medication management for depression. *See* AR 1033. During visits when ARNP Chase treated plaintiff for mental health issues, she prescribed anti-depressants and diagnosed plaintiff with depression and PTSD. *See*, *e.g.*, AR 501-04, 1033, 1054, 1071. She did not offer an opinion regarding plaintiff's mental impairments and functional limitations.

In contrast, Dr. Khaleeq is a psychiatrist, trained specifically to assess and treat patients with mental health conditions. *See* AR 732. As noted above, Dr. Khaleeq conducted a mental status examination and assessed plaintiff for functional limitations related to his mental impairments. AR 730-37. "[E]xperienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" *Id.* In light of Dr. Khaleeq's clinical training and assessment of plaintiff, she was in the best position to assess plaintiff and his mental health functional limitations. The fact that ARNP Chase did not observe the same symptoms or assess functional limitations is not an inconsistency in the medical records, nor is it surprising that Dr. Khaleeq

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 8

observed different symptoms given that ARNP Chase was not assessing plaintiff for mental health impairments and functional limitations. Based on the foregoing and the record as a whole, the Court finds that the fact that Dr. Khaleeq observed more severe symptoms than ARNP Chase is not a specific and legitimate reason to discount the opinion of Dr. Khaleeq.

Second, the ALJ gave little weight to Dr. Khaleeq's opinion because she only viewed one progress note from ARNP Chase and three progress notes from another mental health treatment provider. AR 769. However, the ALJ does not explain why Dr. Khaleeq's opinion should be discounted because she did not have access to all of plaintiff's medical records. As noted by one court "[t]he lack of access to [a plaintiff's] prior medical records does not detract from an opinion based on a current … examination." *Dorsey v. Astrue*, No. 06:12-CV-00530-HZ, 2013 WL 865970, at *11 (D. Or. Mar. 7, 2013). Thus, the second reason offered by the ALJ for discounting Dr. Khaleeq's record is not specific or legitimate.

Third, the ALJ discounted Dr. Khaleeq's opined limitations because the ALJ found that plaintiff's self-reports are unreliable. AR 769. An ALJ may reject a physician's opinion "if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation and quotation marks omitted). However, "when an opinion is *not more heavily* based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (emphasis added) (citation omitted). Like all findings by the ALJ, a finding that a doctor's opinion is based largely on a claimant's own accounts of his symptoms and limitations must be based on substantial evidence in the record as a whole. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted).

Here, the ALJ's finding that Dr. Khaleeq's opinion should be discounted because it is

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 9

based on plaintiff's self-reports is not supported by substantial evidence. Rather, Dr. Khaleeq's opinion was based on a combination of her interview, mental status examination, clinical observations, and review of some of plaintiff's medical records. *See* AR 730-37. Moreover, a mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (Trzepacz and Baker at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted). Thus, in light of Dr. Khaleeq's clinical training to assess a patient's subjective reports, and because the record does not demonstrate that Dr. Khaleeq's opinion is based more largely on self-reports than on her own examination and clinical assessment, the ALJ erred in discounting Dr. Khaleeq's opinion on this basis.

Fourth, the ALJ discounted Dr. Khaleeq's opinion because he determined that plaintiff has had some success in activities of daily living, including his "ability to interact with some degree of success, perform repetitive tasks, perform work activities on a consistent basis, and maintain regular attendance, and deal with the usual stressors encountered in the workplace." AR 769. Inconsistency with Plaintiff's daily activities is a proper basis on which to reject a medical opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Furthermore, not all activities of daily living are transferable to the workplace "where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ offered no citations to the record to support his finding that Dr. Khaleeq's opinion should be discounted because of plaintiff's activities of daily living, nor did he explain how the alleged

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 10

inconsistency is transferable to workplace activity. The ALJ's failure to identify specific conflicting activities of daily living, or otherwise explain the nature of the alleged conflict, was error. *See*, *e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Moreover, claimants need not be "utterly incapacitated" to be eligible for disability benefits, *see Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)), nor should they "be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. As the ALJ has not explained how plaintiff's activities of daily living contradict the symptoms observed by Dr. Khaleeq, and as Plaintiff should not be penalized for attempting to live a normal life, the ALJ erred in rejecting Dr. Khaleeq's opinion on this basis.

Fifth, the ALJ discounted Dr. Khaleeq's opinion because Dr. Khaleeq observed different symptoms than those observed by a CDIU investigator, and the CDIU investigator found plaintiff "articulate and easy to understand" as well as focused and engaged. AR 769-70. As noted above, Dr. Khaleeq is a mental health provider trained to assess mental health limitations. *See* AR 732. As such, she was in a better position than an investigator to assess plaintiff's functional mental health limitations. Moreover, although an ALJ may rely upon a CDIU investigation to discount a plaintiff's credibility and testimony, *see Elmore v. Colvin*, 617 F. App'x 755, 757 (9th Cir. 2015), the ALJ did not explain how the CDIU investigation undermines Dr. Khaleeq's independent objective findings from a mental status examination which resulted in Dr. Khaleeq's opinion. Thus, in light of the forgoing discussion, the ALJ failed to offer specific and legitimate reasons to discount Dr. Khaleeq's medical opinion and functional limitations.

Finally, the Court notes that Dr. Khaleeq opined that plaintiff has a number of mental health impairments, including impairments related to social functioning, ability to concentrate, ability to carry out complex tasks, and ability to perform work on a consistent basis. AR 737.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 11

Each of these opined limitations constitutes significant, probative evidence of plaintiff's mental impairments and functional limitations. The Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent*, 739 F.2d at 1395 (quoting *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). In his analysis of Dr. Khaleeq's opinion, the ALJ did not separately discuss each of Dr. Khaleeq's opined limitations regarded plaintiff's mental impairments and reasons for discounting those opined limitations. Without an adequate explanation, the Court cannot determine if the ALJ properly considered plaintiff's mental impairments and resulting limitations when he formulated the residual functional capacity. *See*, *e.g.*, *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). Thus, the ALJ erred for this additional reason by failing to properly discuss significant, probative evidence including each of Dr. Khaleeq's opined limitations regarding plaintiff's mental impairments.

  B. <u>Tracy Gordon, M.D.</u>

Dr. Tracy Gordy testified as a reviewing medical expert at plaintiff's second hearing on January 8, 2013. AR 539-53. In addition to finding that plaintiff met listing 12.04C and equaled listing 12.06, *see* AR 540-49, Dr. Gordy testified that, based on his review of the record, plaintiff would be limited to work involving only simple, repetitive tasks, with limited to no interaction with the public, and would need "a great deal of understanding from an employer to his authority position over him about his ability to perform tasks on a timely basis." AR 550. Further, Dr. Gordy found plaintiff would need frequent breaks due to concentration difficulties, fifteen to twenty minutes long every thirty to sixty minutes. AR 551-53.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 12

At step four[3], the ALJ summarized Dr. Gordy's findings and noted "the activities described by the investigator during the CDIU as well as the claimant's interactions and presentation with the investigator are inconsistent with this part of Dr. Gordy's opinion." AR 770. The ALJ did not assign any weight to Dr. Gordy's opinion at step four. *See id.* Plaintiff argues the ALJ erred at step four by failing to provide adequate reasons supported by substantial evidence to discount Dr. Gordy's opinions. The Court agrees.

Here, the ALJ offered one blanket reason to discount all of Dr. Gordy's step four opinions: that the CDIU investigator contradicts Dr. Gordy's opinion. AR 770. An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citation omitted). However, all of the determinative findings by the ALJ must be supported by substantial evidence. *See Bayliss*, 427 F.3d at 1214 n.1 (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)); *see also Magallanes*, 881 F.2d at 750 ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting *Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). A blanket statement rejecting all of Dr. Gordy's opined limitations because "the claimant's interactions and presentation with the investigator are inconsistent with this part of Dr. Gordy's opinion" is insufficient and lacks citation to "specific evidence" in the medical record required to reject Dr. Gordy's opinion. *See Sousa*, 143 F.3d at 1244; *see also Embrey v. Bowen*, 849 F.2d

---

[3] At step four of the sequential evaluation process, the ALJ must determine whether or not a claimant's impairment(s) prevent the claimant from performing past relevant work. 20 C.F.R. §§ 404.1520(e), (f) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990). The burden remains with plaintiff at step four. *Id.* However, once they have shown this, the burden at step five shifts to the Commissioner to show that, taking into account a claimant's age, education, and vocational background, she can perform other substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 13

418, 421 (9th Cir. 1988) (noting that the ALJ's opinion lacked the required specificity and "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Moreover, the ALJ failed to explain what weight he afforded Dr. Gordy's opinion at step four. *See* AR 770. An ALJ must evaluate each medical opinion, decide what weight to give it, and give specific reasons for the weight given. 20 C.F.R. § 404.1527(d); SSR 96–2p. The ALJ's failure to do so was error. Based on the foregoing, the ALJ erred in failing to offer specific and legitimate reasons supported by substantial evidence for rejecting Dr. Gordy's opinion at step four and by failing to explain what weight, if any, he afforded Dr. Gordy's opinion at step four.

II.     This Matter Should Be Remanded for Further Administrative Proceedings

Plaintiff argues that this matter should be remanded to cure the errors identified. *See* Dkt. 9, p. 1. The Court agrees. The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 14

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain in regard to the medical opinion evidence in the record, remand for further consideration of these issues—as well as, if necessary, the issue of whether plaintiff is capable of performing his past relevant work or other jobs existing in significant numbers in the national economy[4]—is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 7th day of September, 2016.

*[signature]*

Karen L. Strombom
United States Magistrate Judge

---

[4] If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 15